(No. 43726.—

ROBERT BRAY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(The Edward Gray Corp., Appellee.)

*Opinion filed January 28, 1972.*

CHARLES E. ANESI of HORWITZ, ANESI, OZMON & ASSOCIATES, LTD., of Chicago, (DARIO A. GARIBALDI, of counsel,) for appellant.

ROBSON, MASTERS, RYAN, BRUMUND & BELOM, of Joliet, (FRANK H. MASTERS, JR. and SIDNEY Z. KARASIK, of counsel,) for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

This appeal presents two issues for decision: Was the Industrial Commission's decision of no compensation justified where the parties entered into a stipulation limiting the issues in the hearing to the nature and extent of the petitioner's injury, if any; and was the finding of the arbitrator, confirmed by the Industrial Commission and affirmed by the circuit court—that the claimant had failed to prove any causal connection between his condition of ill-being and his accident—against the manifest weight of the evidence?

Robert Bray, an employee of The Edward Gray Corporation, respondent, filed an application with the Industrial Commission for adjustment of his claim for accidental injury. The arbitrator found that the accident produced no injuries for which compensation was payable, and entered a decision of no award. On review, the Industrial Commission confirmed the decision of the arbitrator, and the circuit court of Cook County confirmed the decision of the Industrial Commission.

The petitioner had been employed as a construction laborer by the respondent for four years, and had never been injured. On April 28, 1967, while he was working in a hole in the ground, certain reinforcing rods, which were being lowered into the hole by a crane, struck him in the face and knocked him down. His nose bled and he was taken to the hospital where he was examined by his employer's physician, Dr. Charles W. Hoffman. The bleeding had stopped before he arrived at the hospital.

The petitioner returned to work the same day, but the bleeding began again and he was taken to a dispensary where ice packs were put on his nose. Forty-five minutes later he returned to work and finished the day. After he reached his home, his nose once more started to bleed, but he managed to control the bleeding and returned to work the next day, when the bleeding recurred. He then returned to the hospital and another doctor swabbed out his nose. At this time his neck began to hurt. He saw Dr.

Hoffman three times afterwards, and was given medication. He then was having difficulty in hearing with his right ear, and he had a specialist examine his nose and right ear.

In August of that year, he was examined by an ear specialist and two other physicians at the employer's behest. He testified at the hearing before the arbitrator that he had difficulty breathing through his nose and that he was totally deaf in the right ear. Prior to the accident in question, neither his nose nor ear had ever been injured.

Dr. Walter Barth, the physician who testified for the petitioner before the arbitrator, stated that his diagnosis was severe trauma of the nose with resultant swelling and discoloration.

Dr. Marshall Simon, an eye, ear, nose and throat specialist, who testified for the petitioner on review before the Commission, stated that his examination of the petitioner on November 16, 1968, disclosed difficulty in hearing a normal speaking voice. His examination of the ears revealed that the pinna and external canal were normal bilaterally; that the tympanic membrane of the left ear was normal, but the right tympanic membrane had a perforation in it. His diagnosis was traumatic injury to both ears, with marked loss of auditory acuity on the left ear, and complete loss on the right. In answer to a hypothetical question, Dr. Simon testified that his findings could have been connected to the injury sustained, and could account for the loss of hearing.

On review before the Commission, two physicians, Drs. Charles W. Hoffman and August Martinucci, testified on behalf of the employer. Dr. Hoffman stated that his examination of the petitioner in the emergency room of the hospital on the day of the accident revealed a superficial swelling on the bridge of the nose, and that no lacerations or abrasions were visible; that X rays taken at that time revealed that the nose and nasal bones were normal, and there was no evidence of internal injury; that on May 1, 1967, at a subsequent examination, the

petitioner told him that he did not work because of nose bleeds; that he reexamined him with an otoscope but found no break in the mucous membrane; and that during his examination he observed that the petitioner appeared confused and disoriented, and detected the odor of stale wine.

Dr. August Martinucci, an eye, ear, nose and throat specialist, examined the petitioner on August 16, 1967, and on March 13, 1969. He testified that his initial examination of the petitioner's ears was essentially negative, although the petitioner complained of difficulty in hearing in the right ear; that his hearing was normal in the left ear, but there was no hearing in the right ear. In response to a hypothetical question, the doctor first stated that the injury sustained would not cause a hearing loss, but qualified his answer when based upon the history given by the patient—that he had no prior hearing loss—and under such circumstances, he stated that the injury could cause a hearing loss. The doctor further stated that a blow to a facial bone would not cause a hearing loss.

The petitioner urges that the causal connection between the injury sustained by him and his loss of hearing was conceded by his employer when the parties, at the outset of the hearing before the Commission, entered into a stipulation that "the Petitioner sustained accidental injuries arising out of and in the course of employment." However, the stipulation also provided that "the questions in dispute in this case are the nature and extent of the injury, if any." The stipulation is one commonly used in compensation case hearings in order to expedite the settlement of claims. We find that it only admitted that an accident had occurred; that it resulted in an injury to the petitioner; that the accident and injury had arisen out of and during the course of the employment; and that the stipulation preserved for decision the question of the nature and extent of the injury, if any, received by the petitioner, and the issue of causality between the accident

and injury. It was still necessary for the petitioner to sustain his burden of proof on the issue of causality. The fact that the petitioner asked hypothetical questions of his own physicians in an effort to establish a causal connection between the accident and injury, indicates that his counsel fully understood that neither he nor the employer's counsel had stipulated as to causality. We find the petitioner's arguments without merit.

The petitioner's contention that the denial of an award by the Commission was against the manifest weight of the evidence is equally without merit. There was a conflict in the testimony of the physicians. Under such circumstances, the resolution of the conflicting medical evidence is peculiarly within the province of the Industrial Commission. In *Floyd v. Industrial Com., 47 Ill.2d 193* at pages 196 and 197, we stated: "The resolution of conflicting medical testimony is peculiarly within the province of the Industrial Commission, including that of causal connection. [Citations.] We recently declared that 'The concern of a court of review in Industrial Commission cases such as these is not to determine medical questions, on which, it appears, men of learning in that field disagree, but rather to pass on the legal question presented, *viz.,* are the findings of the Industrial Commission contrary to the manifest weight of the evidence before it.' (40 Ill.2d at 281.) Thus, unless the findings of the Industrial Commission are manifestly against the weight of the evidence they will not be disturbed on review and this without regard to how this court might or would have decided the case had it been the trier of the facts. [Citations.] " Also see: *Pillsbury Mills, Inc. v. Industrial Com., 14 Ill.2d 23, 27.*

After reviewing the record, we find that the arbitrator, the Commission, and the circuit court could properly come to the conclusion that the causal connection between the accident and the petitioner's condition of ill-being was a matter of conjecture. Therefore, we cannot say that the findings of the Commission are against the

manifest weight of the evidence. Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*