(No. 43950.—

BELL AND GOSSETT CO., Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.*—(Gilbert H. Giambi,
Appellee.)

*Opinion filed November 30, 1972.*

GOLDENHERSH, J., took no part.

PRICE, SCHLAGER, BURGESON & LAUGHLIN, of Chicago (JOHN E. CUNNINGHAM, of counsel), for appellant.

GEORGE J. MURGES, of Chicago, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The employer, Bell and Gossett Co., appealed from a judgment of the circuit court of Cook County which confirmed the Industrial Commission's award granting the petitioner, Gilbert H. Giambi, its employee, an award of $66 per week for 25 and 1/7th weeks of temporary total incapacity for work, the sum of $60 per week for a further period of 90 weeks for 45% loss of use of the left leg, and $2,969.60 for medical care. The Commission had sustained the decision of the arbitrator and ordered it to stand as its decision.

The employer contends that Giambi's disability is not attributable to a specific accident, and that an independent intervening cause broke the chain of causation; that the decision of the Commission was against the manifest weight of the evidence; that the award was based on speculation and conjecture; that the employee should not have been awarded his medical expenses; and that the circuit court erred in taxing interest on the award.

Prior to November 3, 1966, Giambi had been employed by Bell and Gossett Co. for two years as a material handler. He unloaded trucks which contained boxes of copper and steel tubing which weighed up to 1400 pounds.

Boxes weighing less than 50 pounds were handled by hand, but the larger boxes were unloaded with the aid of a small crane. He had worked for Bell and Gossett Co. for a period of four years, and later was employed as a construction worker.

On November 3, 1966, while unloading copper tubing, he testified that he hurt his back. He worked throughout the day but the pain in the small of his back became progressively worse and also went down the back of his left leg. The next day he reported the incident to his foreman, who told him to let other employees do most of the heavy work.

He continued to work for almost two weeks, but the pain persisted. When he first contacted his own physician, Dr. Gerald Kane, on November 17, 1966, he was told to stay in bed until the pain subsided. He did so until November 29, 1966, when he was examined by Drs. Samuel Fraerman and Gerald Kane. He was hospitalized on December 8, 1966, and remained there, in traction, until December 24, 1966. A body cast was then applied which he wore until the first week of February. When Giambi was confined to his bed, his wife notified his employer that he would not be in to work; she notified the company foreman that he was in the hospital and had been placed in traction. The company nurse called Giambi at the hospital to inquire how he was, but no representative of the employer ever offered any medical assistance to him.

In February 1967, Giambi resumed work as a construction laborer. His duties were to load scaffolds with bricks and mortar, to build and tear down scaffolds, and put planks upon scaffolds. While doing this, his back became stiff and his leg again pained him. Several examinations by the doctors following his hospitalization resulted in no objective findings.

Giambi further testified that in April, 1967, while at home, he bent over to lift the toilet seat in the bathroom and his "back went out." He was readmitted to the Highland Park Hospital on April 24, 1967, for surgery. A

laminectomy and bilateral spinal fusion were performed. He subsequently returned to the same construction work and was so employed on the day of his hearing, at which time he still experienced pain down the backside of his leg.

In general, the testimony of Giambi relative to any past medical history was that he had never felt pain in his leg prior to November 3, 1966, but had previously experienced trouble with his back and had lost time at work because of it.

Dr. Gerald Kane, his attending physician, testified that there were no objective findings present before November 3, 1966—the date when Giambi was injured—but that when he examined him on November 29, 1966, he found neurological changes, and upon the basis of his findings and an X-ray examination, he diagnosed Giambi's malady as a herniated disc. He further testified that in his opinion, Giambi did not have a herniated disc prior to November 3, 1966; that, however, a herniated disc may become asymptomatic so that Giambi would exhibit no symptoms thereof, dependent upon the particular time when the doctor saw him; that in April of 1967, after the bathroom incident, Giambi had the same complaints as on November 29, 1966; that an examination on April 11, 1967, revealed muscle spasm in the back; that the straight leg raising test was 70 degrees; that the neurological examination revealed weakness of the extensor hallux longus of the left foot, as well as decreased sensation over the lateral aspect of the left thigh, over the left great toe, and over the lateral aspect of the left foot; and that, in his opinion, there was a causal connection between the injury to Giambi's back and the lifting he had done earlier in November of 1966, and that the condition was permanent.

The employer contends initially that Giambi's injury must be traced to a definite and specific accident without any independent, intervening cause to break the chain of causation. We have no quarrel with this rule of law. However, the employer contends that Giambi had fully

recovered from the injury he sustained on November 3, 1966, and that the toilet seat incident in April, 1967, caused sufficient trauma to constitute an independent, intervening cause, as was evidenced by the doctor's examinations after November 29, 1966, and prior to April 11, 1967, which revealed no objective findings. We disagree with the employer's application of the foregoing rule.

Dr. Kane testified that there were no objective findings present before November 3, 1966, the date of the alleged injury, but that when he examined Giambi on November 29, 1966, neurological changes were present. These findings and an X-ray examination were the basis for the doctor's diagnosis of a herniated disc. The doctor's failure to find any objective symptoms in his examination of Giambi, subsequent to this examination and prior to the toilet-seat incident, did not necessarily mean that he had recovered. The doctor explained that a herniated disc can become asymptomatic, and in such event, there would then be no bulging in or out at that particular moment, but upon slight movement such bulge could occur and thereupon be accompanied by the usual findings with respect to such herniated disc; and that under asymptomatic conditions Giambi would not have experienced pain or disability while being examined. No contrary evidence was presented by the employer.

Whether the toilet-seat incident of April 1967 was an independent, intervening cause of Giambi's injury was a question of fact for the Industrial Commission to determine. The Commission found that it was not, and there was sufficient evidence in the record to justify this finding. From the testimony of Dr. Kane, the Commission could find that Giambi sustained a herniated disc arising out of and in the course of his employment on November 3, 1966, while lifting boxes of copper and steel tubing. The Commission could believe that the lifting of the steel and copper, rather than the stooping and lifting of the toilet

seat, caused the injury. It evidently believed it more plausible that the later act was merely the culminating event, after the injury of November 3, 1966, and the conservative course of medical treatment prescribed and followed, which suggested the need for immediate surgery. See *Railway Express Agency v. Industrial Com. (1953), 415 Ill. 294, 302-303.*

The employer's second contention—that the Industrial Commission's finding of permanent disability is against the manifest weight of the evidence—is based on the employer's assertion that there is no evidence of permanent disability in the record, and particularly, of permanent disability to the petitioner's leg. This is inaccurate. Dr. Kane gave his professional opinion that the petitioner's condition was permanent, and that opinion was not rebutted. Giambi's condition, as described by both his doctor and himself, included disability to both his back and left leg.

It is well established that it is primarily the function of the Industrial Commission to resolve disputed questions of fact including those of causal connection and the extent of disability. In *Gubser v. Industrial Com. (1969), 42 Ill.2d 559,* where similar facts were presented to the Industrial Commission, the court acknowledged that it was conceivable that the petitioner's present back condition "might have been due to either natural degenerative changes or an earlier injury." (42 Ill.2d at 563.) In the case at bar, we hold, as the court did in *Gubser,* that the Commission's finding was not against the manifest weight of the evidence. Also see *Union Starch & Refining Co. v. Industrial Com. (1967), 37 Ill.2d 139.*

The employer next argues that the award made by the Commission was based on speculation and conjecture, because Giambi had a prior history of back trouble, and because the doctor was unable to state specifically which of his two injuries caused the herniated disc. As a consequence, the employer charges that the Commission

simply speculated that Giambi's condition developed as a result of the November 3, 1966 injury, which occurred during his employment.

This argument, however, has been answered adequately above. It simply presents a disputed question of fact which the Commission must determine, and since there is adequate evidence in the record to support that determination, the Commission's decision on this issue will not be disturbed. *Union Starch & Refining Co. v. Industrial Com. (1967), 37 Ill.2d 139, 145.*

The employer insists further that Giambi elected to provide his own medical treatment during his second hospitalization and surgery in April, 1967. It argues that Giambi never formally requested medical assistance from his employer; that he had been under the care of his own personal physician; and that his employer had no knowledge of any necessary medical treatment or surgery such as that which Giambi underwent in April, 1967.

It is true that the Act provides that the "employee may elect to secure his own physician, surgeon and hospital services at his own expense." (Ill.Rev.Stat. 1965, ch. 48, par. 138.8(a).) We do not believe, however, that Giambi here made such election as the Act contemplates. He had been under treatment in November and December, 1966, by Dr. Kane, who performed the surgery upon him in April, 1967, and who continued to care for him thereafter. In February, Giambi ceased to work for the employer-respondent. It is evident that his employer knew of his injury and subsequent hospitalization in December, 1966, because: he had reported the injury to his foreman the day following the accident; his wife called his foreman to report that he was not returning to work, and the plant nurse called him at the hospital to inquire about his well-being.

In *Quaker Oats Co. v. Industrial Com. (1953), 414 Ill. 326,* at page 338, the court stated: "In the absence of an

employee's request for medical assistance, the employer is without liability in this regard, unless it can be shown that the employer was in possession of facts from which he might reasonably be presumed to know or believe that such services were necessary. [Citations.]" Under the circumstances of this case, it cannot be said that the employer was unaware of Giambi's need for medical care.

Finally, the employer protests that part of the order of the circuit court which taxed interest on the petitioner's award from the date of its entry by the Commission. However, in *Proctor Community Hospital v. Industrial Com. (1971), 50 Ill.2d 7,* we held that the application of the Interest Act to Industrial Commission awards was proper, and that in the absence of a tender, interest accrues from the date the award is entered by the Commission. Therefore, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.