(No. 56455.—

PORTEC, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Gary D. Wheat, Appellee).

*Opinion filed March 25, 1983.*

Michael J. Kehart and Albert W. Webber, of Welsh, Ke-

hart, Shafter & Hughes, P.C., of Decatur, for appellant.

Robert J. Allison, of Bennett, Willoughby & Latshaw, P.C., of Decatur, for appellee.

JUSTICE SIMON delivered the opinion of the court:

This is an appeal by Portec, Inc., of a decision of the circuit court of Macon County confirming an award of temporary total disability payments, medical expenses and rehabilitation in favor of Gary Wheat, one of its employees. At issue are the adequacy and timeliness of the notice given of the alleged accident, the extent and causation of the total disability, and the propriety of an award of medical expenses for treatment by a chiropractor which proved unsuccessful.

Portec, Inc., is engaged in the cleaning and repairing of railroad cars. On March 31, 1978, Wheat was standing inside a trailer car helping to guide 1½-ton steel doors into place from a crane when, according to his testimony, the wind caught a door he was holding, lifting him up and throwing him onto the floor of the car. He testified that he felt pain immediately and told a co-worker, "This is hurting," and that although he did not indicate to the co-worker where the pain was he experienced difficulty climbing down from the trailer. He mentioned the accident to his foreman, stating that he had hurt his left side; the foreman advised him to see a doctor if it felt bad enough. Wheat then went home, as it was the end of his shift. While undressing to take a bath, he noticed blood running down the back of his legs. He called Dr. S. K. Velu, his family doctor, made an appointment for the next day, and informed Portec's personnel clerk that he would be going to the doctor the next morning. Wheat told the clerk that he had been thrown to the floor of a boxcar by a door he was setting in place and that he was bleeding. According to the clerk's testimony, he told her the next day that he had

hurt his back.

On April 1, 1978, Wheat visited Dr. Velu and told him what had happened at work. Dr. Velu gave him some gauze and referred him to Dr. William Requarth for hemorrhoid surgery, which was performed on April 25, 1978. Dr. Velu treated him for low back strain and sciatica in May and June 1978. Wheat did not return to work from the time of the accident until July 1978. During this time Wheat was given slips of paper by his doctors explaining why he was off work. Wheat delivered the slips to Portec's personnel clerk.

When Wheat returned to work he began feeling pain in his left side that went down his leg and into his toes. He testified that this was the same pain he had felt before undergoing the hemorrhoid operation, and that it seemed to get worse the longer he stayed at work. Again he notified his foreman and a co-employee of the pain and went home. He tried to go to work the next day but the pain continued. Wheat again told his foreman he was in pain and was directed to report it to Randy Major, Portec's manager of employee relations. Wheat told Major that he could not stand squarely on his left foot and had to see a doctor. Major told him to see the plant superintendent, according to Wheat's testimony, and the superintendent in turn told him to tell Portec's manager of repair services, which he did.

Wheat visited Dr. Velu that day and was sent to Dr. Leonard Strichman, an orthopedic physician. Dr. Strichman administered flexion and leg-raising tests and noted the persistence of sciatic pain and "questionably good flexion and extension, abduction and adduction of both thighs *** and perhaps some decrease of dorsiflexion and eversion of his left foot" in a report dated August 17, 1978. He suggested that the cause of the pain would probably prove to be a herniated disc at L-4, L-5 or S-1, but the myelogram he ordered revealed no herniation.

Dr. Harry Bremer, to whom Dr. Strichman referred Wheat, saw him in October 1978 and was unable to determine the cause of the pain. Wheat was off work during this period and was periodically given written explanations of his absence by his doctors, which he transmitted to Randy Major.

In February 1979, receiving no relief from his pain or insight into its cause, Wheat visited Dr. Harold Allen, a chiropractor. On Dr. Allen's advice, Wheat did not go to work during this period of treatment. Dr. Allen's therapy seemed to relieve the pain at first, but it proved unavailing over time and Dr. Allen recommended that Wheat seek treatment at the Veterans' Administration Hospital in Indianapolis. Wheat made several trips there, and in November 1979 Dr. Joseph Serletti performed a second myelogram, which revealed a defect at L-5, S-1. Dr. Serletti hypothesized that this was due to a herniated disc and ordered a laminectomy, which was performed on November 15, 1979. No disc irregularities were found, but the laminectomy did reveal an abnormal thickening of the ligamentum flavum, a tissue surrounding the spinal nerve roots, a piece of which was removed. Complications developed as a result of this operation which required Wheat to return to the hospital for further surgery, and he was not discharged until April 1, 1980. After that he visited the hospital as an outpatient twice through August 1980 complaining of pain in his left hip and thigh. Dr. Serletti found nothing clinically wrong with Wheat but recommended an anti-inflammation drug. Wheat continued to have pain and returned several times to see Dr. Serletti through March 24, 1981, the date of the review hearing before the Industrial Commission. As of that date, Wheat had not returned to work.

On October 16, 1980, an arbitrator for the Industrial Commission found that Wheat had suffered a work-re-

lated injury on March 31, 1978, and had given timely notice thereof, and entered an award of 107$^6$/$_7$ weeks' temporary total disability benefits. The Industrial Commission modified the award to reflect temporary total disability from March 31, 1978, through May 19, 1981, and to further include medical expenses and rehabilitation benefits. The circuit court of Macon County confirmed the award, and this appeal followed.

Portec first disputes the Industrial Commission's finding that notice of the alleged accident was adequately given in 1978. It argues that the personnel clerk with whom Wheat communicated on the day of the accident was not the person in charge of handling workmen's compensation claims, and that by the time Wheat got in touch with the proper person, Randy Major, the statutory 45-day period for giving notice of accidents (Ill. Rev. Stat. 1977, ch. 48, par. 138.6(c)) had expired. Portec also argues that even if the personnel clerk were the proper person to whom accident claims were to be reported, Wheat informed her only that he had hemorrhoids and said nothing to her about the back or leg pain on which his claim depended.

We believe the notice given by Wheat was neither untimely nor inadequate. The personnel clerk testified that at the time of the accident she was temporarily in charge of processing all insurance claims, including group insurance policy claims for workmen's compensation benefits, that she reported to Portec's comptroller, and that Randy Major was not her supervisor but was in a different department. Major testified that he was in charge of receiving notice of accidents, the personnel clerk having been fired sometime in 1978. However, Major admitted on cross-examination that the personnel clerk to whom Wheat communicated the accident was handling accident claims at the time Wheat reported his accident to her. From this testimony it was possible to

infer that the personnel clerk was a company employee to whom accidents could be reported at the time of Wheat's accident, even though that may not have been true in July 1978 when Wheat attempted to return to work and dealt with Major for the first time. Factual determinations of the Industrial Commission are not to be set aside unless contrary to the manifest weight of the evidence (*Arcole Midwest Corp. v. Industrial Com.* (1980), 81 Ill. 2d 11), and we will not upset this finding on the record before us.

Portec argues that even if the personnel clerk were a proper person to whom accidents could be reported, the notice Wheat gave her was deficient because it failed to mention back pain. This is contradicted by the record. The clerk testified that Wheat told her on the day after the accident that he had hurt his back, a position which she maintained even on cross-examination. No contrary testimony appears in the record. It is true that Wheat also told the clerk that he was bleeding down his leg, a symptom which was presumably attributable to his hemorrhoids rather than to his back disorder, and that the accident report filled out by Dr. Requarth on June 29, 1978, mentioned no disorder other than hemorrhoids. However, the accident report reveals that Wheat consulted Dr. Requarth only at the suggestion of Dr. Velu, and that Dr. Requarth's treatment consisted only of a hemorrhoidectomy. Dr. Velu sent Portec a letter on June 20, 1978, certifying that Wheat was under his care for low back pain and sciatica. The evidence supports the inference that Wheat was suffering from two simultaneous disorders, one of which involved back pain, and that Wheat was treated separately for them and communicated news of both to the personnel clerk soon after the accident occurred. We conclude that notice sufficient to inform Portec of the nature of Wheat's claim was given in timely fashion (*Republic Steel Corp. v. Industrial*

*Com.* (1962), 26 Ill. 2d 32, 41), and that the claim for benefits based on back pain was properly before the Industrial Commission.

Portec maintains that the Industrial Commission erred in finding that Wheat suffered a work-related injury on March 31, 1978. This argument is based alternatively on Portec's contention that there is no indication that Wheat complained of back pain until long after March 31, and on the absence of evidence either linking the thickening of the ligamentum flavum to the accident or demonstrating some other medical explanation for the back pain.

We have already considered the first of these contentions and concluded that it lacks merit. As to the second, we observe that in a deposition taken on August 27, 1980, Dr. Serletti responded in answer to a hypothetical question that Wheat's 1978 accident was "a serious injury and of significant magnitude to his back." He also stated that the complications that developed after the initial surgery he performed on Wheat were attributable to the initial injury because the back pain which he believed was caused by that injury in turn prompted the myelogram which led to his decision to operate. The relationship between an incident at work and a subsequent condition of ill-being is a question of fact, to be resolved by the Industrial Commission on the basis of evidence in the record and inferences reasonably derivable therefrom. (*A. O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 245.) We believe that Dr. Serletti's testimony, alone or in conjunction with the apparent absence of back or leg pain prior to March 1978 (see *Lambert v. Industrial Com.* (1980), 79 Ill. 2d 243, 248; *A. O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 245) and the fact that the myelogram of November 1979 revealed a defect, would be sufficient to sustain a determination that the incident on March 31 caused the pain, even

without affirmative testimony that the pain had a specific medical cause induced by the incident. See *Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487, 497 (upholding a finding that a death was caused by a heart attack where the surrounding circumstances could have supported such an inference).

Portec points out that the hypothetical on which Dr. Serletti based his testimony was inaccurate in certain respects and therefore urges us to disregard his testimony as to causation. Specifically, Portec claims that Dr. Serletti relied on a statement by Wheat's attorney that Wheat "was thrown from a boxcar," while in fact he was merely blown to the floor in a boxcar. We do not view this objection as a valid one. Dr. Serletti went on to testify:

"A. Yes, I have an opinion.

Q [by Wheat's attorney]. What is that opinion, sir?

A. It is my opinion that, and I state it with a reasonable degree of medical certainty, that if the history as you present it to me is accurate and valid as in regards to his boxcar injury, then all of his treatment in the V.A. facility, both as an out-patient and in-patient is directly, causally related to that injury.

Q. *You're referring of course to the history that you have already testified to that is contained in the hospital record that you've referred to here today?*

A. *Correct.*" (Emphasis added.)

The history "contained in the hospital record" includes several reports which state that Wheat's troubles began when he was blown "into" a boxcar. Dr. Serletti himself stated at the beginning of the deposition that a discharge summary dated November 1979 mentioned that "a strong wind blew [Wheat] in a boxcar." The suggestion that Wheat was thrown "from" a boxcar appears at only one point in the deposition and nowhere in the hospital records. In light of Dr. Serletti's clear assertion that he was relying on those records, which Portec does not allege contain other inaccuracies, we do not believe the Industrial Com-

mission could have been misled by his testimony.

Portec next argues that Wheat failed to prove that he was unable to work for the 163⁴/₇ weeks covered by the total disability award, but demonstrated at most that he did not work during that time. It asks us to reverse the award for at least some of that period, on the authority of *Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581. In *Arbuckle*, as in *Lehigh Stone Co. v. Industrial Com.* (1925), 315 Ill. 431, part of a total disability award was reversed in light of clear testimony that the claimant chose of her own will to remain off work for part of the alleged disability period. The facts of the instant case do not compare, however, with those of *Arbuckle* or *Lehigh Stone.* There was no testimony by Wheat or by any eyewitnesses that he was able to work or did anything inconsistent with an inability to work at any time following the accident. The medical evidence relied on by Portec as demonstrating that Wheat was capable of working, two letters by Dr. Bremer dated November 1978 and August 1979, state merely that the patient's symptoms had subsided somewhat over time and that no neurologic disorder could be found. They noted that Wheat limped on his left leg, prescribed medication for muscle spasms, and recommended further exploratory treatment such as an EMG examination. These letters say nothing about Wheat's ability to work; if anything, they evidence a belief that Wheat had some ongoing ailment which would eventually be diagnosed. The record also contains a work slip signed by Dr. Strichman, dated July 27, 1978, and taken from Portec's files, ordering Wheat to remain off work for the month of August 1978; similar orders signed by Dr. Mark O'Meara of the Veterans' Administration Hospital in August and October 1979; several more off-work orders, covering several months each, signed by doctors at the hospital following the surgery of November 15, 1979; and a deposition in which Dr. Allen testified that he kept Wheat from working from February

23, 1979 until sometime in June of that year. Wheat continued to complain of pain after his discharge from the hospital in 1980, and Dr. Serletti testified in a deposition on May 6, 1981, that he would be unable to perform industrial or manual labor "for the present and the future." There is ample evidence from which the Industrial Commission could infer that Wheat's injury disabled him from work for the entire period following his accident, rather than for just those weeks or months represented by work slips. We will not reverse an award based on permissible inferences merely because other inferences would also have been permissible (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 19), and we affirm this award accordingly.

Portec's final complaint concerns the award of medical expenses. It contends alternatively that it should be immune from all liability for such expenses because Wheat's back and leg problems were not shown to have resulted from an accident at work, and that Dr. Allen's bill was not a proper item of medical expense under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a)) because he was a chiropractor rather than a medical doctor and his treatment did not help Wheat. We have already dealt with the former contention at length, and we find no merit in the latter. Nothing in section 8(a) of the Workers' Compensation Act limits compensability to treatment which is successful or which is rendered by a medical doctor rather than a chiropractor. The Act requires only that where there is no agreement between employer and employee concerning physicians available to employees, "[when] as a result of [an] injury the employee is unable to be self-sufficient the employer shall further pay for such maintenance or institutional care as shall be required" (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a)). In this case Portec did not attempt to limit Wheat's choice of physicians to medical doctors; Wheat saw Dr. Allen only after conven-

tional medical treatment failed to relieve his pain, and Wheat testified that Dr. Allen's treatment did relieve his pain somewhat at first although not over the long run. There is no basis for us to dispute the Industrial Commission's determination that Wheat considered Dr. Allen's therapy reasonably necessary when he consulted him.

Accordingly, the judgment of the circuit court of Macon County is affirmed.

*Judgment affirmed.*