ROMIE NEAL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (IML Freight, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—84—0934WC

Opinion filed February 26, 1986.

Romie Neal, of Gobles, Michigan, for appellant, *pro se.*

Dowd & Dowd, Ltd., of Chicago (Joseph V. Dowd and Philip J. McGuire, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

The petitioner, Romie Neal, filed a claim under the Workmen's Compensation Act (the Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) for an injury he sustained while an employee of the respondent, IML Freight, Inc. (the company). The petitioner appeals from a judgment of the circuit court confirming the Industrial Commission's denial of benefits.

On August 15, 1975, the petitioner was injured in an accident unrelated to the instant claim. The petitioner consulted Dr. Meany, an orthopedist, who treated the soreness and pain in the petitioner's

neck and shoulders as well as the pain in his right arm to the elbow and his left arm to the fingertips. Dr. Meany released the petitioner to work on August 20, 1976. From that date to September 28, 1976, the petitioner loaded, drove and unloaded his delivery truck and took no medication for the left arm numbness or for the pain he experienced in his neck, shoulders and arms. In August of 1976, Dr. Robert Busch attributed impaired motility of the petitioner's neck and arms to muscular myositis, cervical contusion and strain injury. At that time, Dr. John Gleason related the petitioner's symptoms to minimal degenerative hypetrophic osteoarthritis of the cervical spine. Ultimately, the petitioner was awarded permanent 15% left arm disability.

As to the injury in the instant case, the 39-year-old petitioner testified that on September 28, 1976, he was a truck driver for the company. Enroute to a delivery that day, the left side of the petitioner's trailer struck a viaduct and the vehicle stopped suddenly. The petitioner was thrown against the windshield and jerked back against the cab. He noticed dizziness and head pain but managed to survey the damage to the truck; unload boxes to complete the delivery; and drive back to the company's terminal. Then the petitioner experienced loss of left eye vision, severe headaches, left side numbness and pain in his neck, shoulders and arms. He went to the Clearing House Clinic for treatment. The following day, the petitioner consulted Dr. Simon, after the company denied his request for treatment.

The petitioner next consulted Dr. Ichandra, who treated his neck. In October of 1976, the petitioner began to see Dr. Frank DeVincenzo, a neurologist, who administered tests, prescribed therapy for the petitioner's neck, shoulders and lower back, and performed a cervical fusion. In September of 1977, Dr. Matias Castro prescribed a neck brace which the petitioner wore continuously for two months and then once or twice weekly. The petitioner routinely consulted Dr. DeVincenzo and Dr. Castro for his pain and symptoms. In October of 1978, the petitioner began to wear reading glasses.

At the arbitration hearing, the petitioner introduced a November 1978 report of Dr. Busch. Busch's report reiterated his prior diagnosis; noted the results of the cervical fusion; and attributed the petitioner's condition to concussion, muscular myositis and strain injury to both shoulders, left upper arm and left forearm.

The petitioner further testified that he had neither earned wages nor applied for nor returned to work since the accident because his pain prevents him from performing either the physical or mental as-

pects of his job.

The company presented the testimony of Bruce Barclay, an investigator, who by stipulation in the presence of both parties' counsel, showed motion pictures of the petitioner loading and unloading a vehicle in April of 1978. The company introduced the March 1978 report of Dr. Edir Siqueira, who noted the petitioner's post anterior cervical fusion symptoms but found no organic neurological disease warranting further treatment.

After proofs were closed, the arbitrator reopened the case to admit a January 1980 report from the Rehabilitation Institute of Chicago. That report highlighted the petitioner's lack of college education and lack of interest in pain management, and recited Dr. Robert Addison's finding that the petitioner's cognitive ability was limited and Dr. Yoon Hahn's opinion that the petitioner was experiencing chronic neurological pain which did not warrant further neurological evaluation.

The company also introduced the April 1980 deposition of Wallace Yerty, a Western Michigan educational supervisor who employed the petitioner, commencing September of 1979, to transport books and audio-visual equipment as a work-study program participant. The petitioner then admitted that since 1979 he had been an above-average student at Western Michigan University; that he had participated in work-study; and that he dropped the program because of his pain.

Arbitrator Thomas Dillon found that the petitioner sustained accidental injuries arising out of and in the course of his employment and awarded the petitioner temporary total benefits for 79 weeks of incapacity, medical expenses and 200 further weeks of compensation for his 40% partial disability. Both parties appealed to the Commission.

At the review hearing, the petitioner testified that subsequent to arbitration, Dr. Castro examined him bimonthly and prescribed medication. The petitioner stated that he was continuing his education and would refuse gainful employment. Later, the petitioner testified that he would accept employment within his limitations.

The Commission reversed Arbitrator Dillon's decision. Based on the petitioner's conflicting testimony about the accident, Dr. Meany's August 1976 findings, and the petitioner's failure to present medical evidence from his treating doctor, Dr. DeVincenzo, of either disability or aggravation of a pre-existing condition, the Commission found that the petitioner failed to prove either disability from the accident or that his cervical condition was causally connected to the accident.

The petitioner appealed.

The circuit court found that the Commission's decision was not contrary to the manifest weight of the evidence. The petitioner appeals, *pro se*, the order confirming the Commission.

The company initially argues that the petitioner's brief should be stricken for violating Supreme Court Rule 341(e)(6) (87 Ill. 2d R. 341(e)(6)). The statement of facts should contain the facts necessary to understand the issues raised. (*Fogel v. Hodes* (1979), 68 Ill. App. 3d 594, 386 N.E.2d 389.) The petitioner's argument relies upon facts which were not of record and which were not included in his incomplete statement of facts. However, we choose to entertain this *pro se* appeal.

The petitioner initially argues that the parties stipulated to causal connection and the company merely asked the Commission to modify the arbitrator's award. Therefore, he argues that the Commission erred in finding his injuries were not causally connected to the undisputed accident.

The company responds that the stipulation encompassed neither causal connection nor disability and agrees with the Commission's argument that it properly addressed and resolved causal connection, a factually disputed issue. The company also argues that the Commission's power to rule was not limited by the company's review prayer to only modify the award.

At the arbitration hearing, the parties stipulated that the petitioner's accidental injuries arose out of and in the course of his employment but disputed the nature and extent of the alleged injury, if any, and the causal connection between the petitioner's accident and his alleged condition of ill-being. Arbitrator Dillon found, as stipulated, that the petitioner sustained accidental injuries arising of and in the course of his employment. The petitioner's review brief cited that finding, and the company's review summary limited the issue on review to the excessive award. The Commission defined the issues on review as the nature and extent of the petitioner's disability and the amount of medical treatment resulting from the accident. The Commission resolved those issues in the company's favor, finding that the petitioner failed to prove either that he was disabled or that his condition was causally connected to the accident.

■ A stipulation that the petitioner sustained accidental injuries arising out of and in the course of employment, which also limits the disputed issues to the nature and extent of the injury, if any, only admits that an accident occurred which injured the petitioner and that the accident and injury arose out of and during the course of

the employment. Questions preserved for decision include the nature and extent of the petitioner's injury, if any, and causality between the accident and the injury. *Bray v. Industrial Com.* (1972), 50 Ill. 2d 262, 278 N.E.2d 753.

■ Arbitrator Dillon's decision implicitly ruled that the petitioner's accident was causally connected to his injury and awarded benefits based on the nature and extent of the petitioner's injury. Neither party expressly raised those issues for review. Both the disputed nature and extent of the disability and the relationship between a work-related incident and a subsequent condition of ill-being are factual questions resolved by the Commission on the basis of the evidence and reasonably derivable inferences. (*Portec, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 303, 447 N.E.2d 813.) The issue, then, is whether the Commission exceeded its authority. Authority to address an issue depends on whether the issue was raised at arbitration or on review. (*Jewel Companies, Inc. v. Industrial Com.* (1984), 125 Ill. App. 3d 92, 465 N.E.2d 603.) Controverted issues are defined by the parties' conduct rather than their contradictory prior stipulation. *Kenney v. Industrial Com.* (1983), 93 Ill. 2d 516, 445 N.E.2d 305.

■ In the instant case, at arbitration, the parties preserved for decision the nature and extent of the injury, if any, and causation. On review, the company orally expanded its review summary, which merely claimed that the award was excessive and prayed for modification and reduction. The company informed the Commission that "the additional medical is in dispute and the nature and extent." The petitioner then proceeded to relate his treatment, activities and symptoms subsequent to arbitration. Therefore, neither the parties' stipulation nor the prayer in the company's review summary preclude the Commission's findings as to causation or absence of disability.

■ The petitioner next argues, for the first time on appeal, that he was prejudiced by the Commission's improper reliance upon a medical report not of record and by its failure to consider the company's review summary and the petitioner's review brief, which were not of record. The company and the Commission deny that the Commission relied upon the report and that the review summary and brief should be part of the record. The Commission also argues that the petitioner waived consideration of the issues. The petitioner responds that the company placed the medical report in the Commission's file after the case was closed. He further argues that its mere presence in his file even though he retrieved the report suggests that the Commission relied on it.

A careful review of the record reveals that neither the medical report nor the company's review summary nor the petitioner's review brief were of record. Those documents were never offered as exhibits, as evidence, or as basis for a motion to supplement the record. Ordinarily, issues involving defects in the record are resolved by burdening the party seeking review with the burden of insuring that the Commission files a complete record. (*Berry v. Industrial Com.* (1978), 72 Ill. 2d 120, 378 N.E.2d 507.) However, we feel compelled to note the uncorroborated arguments on appeal. The company denied knowledge of the medical report which the petitioner accused the company of subpoenaing and placing in the Commission's file. The Commission admitted but could not explain how the report seeped into its file. To end the scenario, the petitioner stated in his reply brief that he retrieved the report from the Commission's file.

The record neither supports the petitioner's disturbing allegations nor provides a basis for us to condone, comment upon or ignore the medical report mystery. Therefore, we decline to speculate as to the serious allegations against the Commission. Instead, we conclude that the record fails to divulge that the record was tainted by the medical report. While we do not condone the unexplained absence of the company's review summary and the petitioner's review brief from the record, we acknowledge that the petitioner's brief contained copies of those documents, and consider the omission harmless.

■ Finally, the petitioner argues that the Commission erred in determining that he was neither permanently disabled nor sustained injuries causally connected to the accident. The petitioner asserts that the injury was undisputed and could have aggravated his 1975 injury. Neither the accident nor the petitioner's past and present symptoms nor the cervical fusion were disputed. In the petitioner's opinion, his medical reports support causation by objectively concluding that the petitioner was injured and commenced treatment on the date of the accident, and that the injury necessitated the cervical fusion. Therefore, the petitioner argues, he was injured during the course of his employment, and the Commission's findings were against the manifest weight of the evidence.

The company responds that the Commission's decision was affected by the petitioner's credibility and by the conflicting subjective medical reports. The petitioner further argued that the company refused him rehabilitation and, therefore, he attempted to rehabilitate himself. The petitioner also claims that Commissioner Thomas observed his demeanor and assessed his credibility but left the Com-

mission prior to and did not render the decision.

It is axiomatic that the Commission determines disputed factual questions including credibility, causal connection (*Certi-Serve, Inc. v. Industrial Com.* (1984), 101 Ill. 2d 236, 461 N.E.2d 954), and extent of disability. (*Bell & Gossett Co. v. Industrial Com.* (1972), 53 Ill. 2d 144, 290 N.E.2d 585.) Recovery is allowed when an employment accident aggravates or accelerates a pre-existing disease (*Mason & Dixon Lines, Inc. v. Industrial Com.* (1983), 99 Ill. 2d 174, 457 N.E.2d 1222) and is not precluded by evidence that the employee is able to earn occasional wages or perform useful services. *Yellow Freight System, Inc. v. Industrial Com.* (1984), 124 Ill. App. 3d 730, 464 N.E.2d 890.

■ A petitioner's testimony about an accident might in and of itself justify an award. However, when that testimony is considered with all the facts and circumstances, the manifest weight of the evidence may not support an award. The existence of prior health problems neither deprives the petitioner of his right to an award, nor relieves him from the burden of proving the connection between his employment and his subsequent problems. (*Caterpillar Tractor Co. v. Industrial Com.* (1980), 83 Ill. 2d 213, 414 N.E.2d 740.) Also, a determination by the Industrial Commission should be upheld where there is conflicting medical testimony as to causation unless contrary to the manifest weight of the evidence. *O'Neal Brothers Construction Co. v. Industrial Com.* (1982), 93 Ill. 2d 30, 442 N.E.2d 895.

In the instant case, the conflicting medical evidence and the petitioner's testimony created factual disputes which the Commission resolved by determining that the petitioner did not incur any disability causally connected to the 1976 accident. After the petitioner's prior accident, Dr. Meany treated the petitioner's neck, shoulders, left arm and upper right arm. The petitioner returned to work but continued to experience left arm numbness and pain in his neck, shoulders and arms. In August of 1976, Dr. Busch diagnosed the petitioner's condition as cervical contusion and sprain and muscular myositis, and Dr. Gleason diagnosed the petitioner's condition as degenerative hypertrophic osteoarthritis of the cervical spine.

After the 1976 accident, the petitioner saw several doctors before Dr. DeVincenzo treated his neck, shoulders and lower back and performed a cervical fusion. After Dr. Castro prescribed a neck brace, the petitioner routinely consulted him and Dr. DeVincenzo, but the petitioner failed to present medical evidence from them of either disability or aggravation of a prior condition. Instead, he presented Dr. Busch's 1978 report which stated in its history that the

petitioner injured his upper back and neck in the accident and was unconscious. He then noted his prior diagnosis, the results of the cervical fusion and diagnosed the petitioner's conditions as concussion, muscular myositis and strain injury to both shoulders, left forearm and upper arm. Dr. Siqueira's report stated that the petitioner had no organic neurological disease warranting treatment. Dr. Hahn's report stated that the petitioner had chronic neurological pain which did not warrant further evaluation. The petitioner convinced Dr. Addison that his cognitive ability was limited when, in fact, the petitioner was an above-average college student. He transported and lifted books and audio visual equipment as a work-study participant.

Evidently, both prior and subsequent to the accident, the petitioner experienced numbness and pain in his neck, shoulders and arms. Symptoms appearing after the accident included dizziness, severe headaches and loss of vision which did not warrant glasses until 1978. Contrary to the petitioner's statement that pain prevented him from performing his prior job, movies taken in 1978 depicted him loading and unloading a vehicle. After initially testifying that he would refuse employment, the petitioner later decided that he would accept employment within his limitations.

We decline to disturb the Commission's finding that the totality of the evidence supports modification of the arbitrator's decision. The petitioner failed to prove that he incurred a disability which was causally connected to the accident or that the accident aggravated his prior condition. The petitioner's complaints never ripened into objective neurological findings attributable to the accident. The Commission properly resolved the factual questions and drew inferences from the evidence against the petitioner. Those findings were not contrary to the manifest weight of the evidence. That conclusion is not altered by the fact that one Commissioner left the Commission prior to the decision.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WEBBER, P.J., and McNAMARA, LINDBERG and KASSERMAN, JJ., concur.