(No. 30150.—

FRANKLIN COUNTY COAL CORPORATION, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HARRISON CARR, Defendant in Error.)

*Opinion filed November 20, 1947—Rehearing denied Jan. 14, 1948.*

ANGERSTEIN & ANGERSTEIN, of Chicago, and WILLIAMS & HARRISON, of Benton, for plaintiff in error.

M. J. HANAGAN, of West Frankfort, for defendant in error.

Mr. JUSTICE GUNN delivered the opinion of the court:

Defendant in error, Harrison Carr, herein referred to as respondent, was injured in the coal mine of Franklin County Coal Corporation, plaintiff in error, on January 15, 1943. He filed his application for adjustment of claim, and an award was made for temporary total incapacity for 26⅔ weeks at $16.50 per week, and was allowed a further sum for partial disability amounting to the sum of $7.35 per week for a period of 397⅓ weeks under section 8(d) of the Workmen's Compensation Act. The award of the arbitrator was made on February 9, 1945, and the final decision of the Industrial Commission on May 8, 1946. On writ of *certiorari* to the circuit court of Williamson County the finding of the commission was sustained. A writ of error to this court has been allowed.

The sole point for decision is whether the award of $7.35 for 397⅓ weeks under section 8(d) of the Workmen's Compensation Act is authorized by law. Plaintiff in error contends that the facts are not in dispute, so that a question of law is presented; that prior to the injury the respondent had earned the sum of $2335 for the pre-

vious year,—*i.e.*, from January 15, 1942, until January 15, 1943, and that his earnings for the year after he returned to work,—*i.e.*, from July 15, 1943, until July 15, 1944, amounted to the sum of $2365.15, and that his actual earnings for the year 1944 were $2491.53, and therefore, since he has received compensation from his employer in a sum equal to what he was receiving before his injury, he is not entitled to any allowance for partial disability.

Respondent was a machine operator in a mine, and his basic wage was $9.80 per day; but for overtime and extras and part of the time for portal pay he received $11.90 per day. When respondent returned to work, after an absence of approximately six months, it was found he was unable to do the work of a machine operator, and he was set to work as a trapper, for which the basic pay was $6.75 per day, and with overtime, portal, etc., $8.20 per day. The hours of work, at the time of the injury, in this mine were seven hours per day and five days per week, making a 35-hour week. The record shows without dispute that, for the year previous, respondent had worked 228 days. For the year following his return to work there were 288 working days in that mine.

As a machine operator drawing $9.80 per day for the 228 days worked by respondent in 1942 and 1943 to the date of his injury he received the sum of $2234.40. After respondent returned to work, for the following year, he worked 288 days at a basic wage of $6.75, or a total of $1944, but for the like number of 228 days he would have received $1539, and thus he received $3.05 per day less as a trapper than he was receiving as a machine operator, or a total difference, based on 228 days in the previous year's work, of $695.40, which makes a weekly difference of $13.37, which, under the act as it now stands, entitled respondent to one-half thereof, plus ten per cent, or $7.35 per week. The contention of plaintiff in error is that this basis is not in compliance with the statute, and that when

his total earnings for the year are ascertained, as pointed out above, he is not entitled to any partial incapacity allowance whatsoever.

Section 8(d) of the Workmen's Compensation Act (Ill. Rev. Stat. 1945, chap. 48, par. 145,) provides: "If, after the injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall * * * receive compensation * * * equal to fifty percentum of the difference between the average amount which he earned before the accident, and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." Section 10(g) (Ill. Rev. Stat. 1945, chap. 48, par. 147,) provides: "Earnings, for the purpose of this section, shall be based on the earnings for the number of hours commonly regarded as a day's work for that employment, and shall exclude overtime earnings. The earnings shall not include any sum which the employer has been accustomed to pay the employe to cover any special expense entailed on him by the nature of his employment."

Section 8 has been many times construed, and generally the rule may be deduced as holding that the commission should require proof of the actual earnings of the employee for a substantial period before the accident and after he returns to work. Or, in the event he does not return to work, proof of what he is able to earn in some suitable employment. (*Groveland Coal Mining Co.* v. *Industrial Com.* 309 Ill. 73.) In the case cited, in commenting, the court said: "If the employee is making an honest effort to work and the evidence shows that he is actually earning what he is able to earn but that it is less than he earned before his injury, then a fair award for the partial disability he has suffered would be the statutory percentage of the difference between the average amount he actually earned before his injury and the average amount he is actually earning

since his injury. Where there has been a change in wage scale, that should be taken into consideration by the commission in determining whether there has been a decrease in earning capacity. The object of this section of the statute is to compensate the injured employee for his *reduced earning capacity,* and if the injury *does not reduce his earning capacity* he is not entitled to compensation." While many cases have been cited, they all conform to this lucid statement of the rule.

The cases cited by plaintiff in error do not hold differently. In *Voight* v. *Industrial Com,* 297 Ill. 109, the petitioner was receiving the same wages. In *Paradise Coal Co.* v. *Industrial Com.* 301 Ill. 504, and *Merritt* v. *Industrial Com.* 322 Ill. 160, there was no proof of subsequent wages; and in *Chicago Park District* v. *Industrial Com.* 372 Ill. 428, a partial disability award was sustained. There is no departure from the rule in *Groveland Coal Co.* v. *Industrial Com.* 309 Ill. 73, or anything that would sustain the contention of plaintiff in error that the gross yearly income amount controls, without reference to increased wages, overtime, or increased hours of work. The test is the capacity to earn, not necessarily the amount earned.

The statute provides only basic wage and not overtime may be used in computing the amount due for partial disability, (sec. 10(g);) and since the Supreme Court of the United States has held that portal pay is overtime, (*Tennessee Coal, Iron & Railroad Co.* v. *Muscoda,* 321 U. S. 590, and authorities cited in brief in 152 A.L.R. 1015,) it seems reasonably certain that the amount for partial disability is arrived at by ascertaining the reduced earning capacity. In the instant case it stands without dispute that respondent was earning $3.05 per day less as a trapper than he did as a machine operator, but that after the hours of work had been increased from 35 to 54 hours per week, and after a wage increase, there was a difference in wage

between $11.90 for a machine operator and $8.46 for a trapper, which amounted to $3.44 per day.

The yearly figures placed in the record by plaintiff in error disclose that in ascertaining prior earnings of respondent there was included not only the regular wage, but overtime, on a basic week of 35 hours, but in ascertaining the yearly earnings after the accident the computation included the regular wage, overtime, portal to portal, and a basic week of 54 hours. And in addition, the computation of earnings for time subsequent to the injury was derived from a greater number of work days per year than prior to the accident. Thus, for the year previous respondent worked 228 days, and for the next succeeding year worked 288 days. It would be no fair comparison to say the respondent was making more yearly by working 288 days, part of which was for a 54-hour week, than when he worked 228 days at a 35-hour week. In other words, we hold that the amount respondent received yearly, arrived at in this manner, is not the proper basis of comparison.

The law provides that where the employer operates for a part of the whole number of working days each year, the basis of the year shall be not less than 200 days. (Sec. 10(e).) For instance, in the case of an employee who worked five weeks only, to ascertain the average amount to be paid weekly a year would be taken as 200 days for the minimum, but the actual money the employee would receive during that year would be five weeks' pay, and to compare this with a full year's pay after he had recovered and again resumed work would bring about a situation where the amount received in the following year as compared with the previous year's presumptive average would, if taken on a yearly basis, always be in excess of previous earnings.

Where section 8 provides the injured employee shall receive fifty percentum of the difference between the aver-

age amount earned before and after the accident, it has no reference to the total earnings per year but refers to the wages, whether by day or week, and provides the formula for extending it over the period of weeks fixed by law. This must be apparent because of the many instances where the employee had worked less than a year, where hours of work were increased, or, where overtime would be involved. This section, together with section 10(g), provides a standard by which the weekly disability amount is determined from the average difference in earning ability before and after the accident. Thus, in this case it appears that upon a basic wage of $6.75 compared to $9.80 there is a basic difference of $3.05 per day.

The record discloses that the amounts proved to have been received yearly by respondent are not based upon the same standard of wages and hours as existed at the time of respondent's injury, as at that time the commission considered only the basic wage, and excluded portal pay and overtime. In arriving at the amount of subsequent earnings for the following year for comparison, plaintiff in error includes the basic wage, the overtime, the portal payments, and 19 extra hours per week, but the amount applying to overtime, portal pay or the extra hours is not disclosed. It thus appears from the record that the only element which could be considered by the commission is the difference between the earnings on the daily basis, which was for the purpose of fixing the compensation, converted into a weekly basis amounting to $7.35 per week.

Complaint is made that the commission estimated the respondent would be able to earn in the future $29.60 per week, but this is an obvious error, since the award was made upon the assumption he was reduced in wages in the sum of $3.05 per day. The fact the commission may have inadvertently understated the amount of the weekly earnings, when it reached the correct result, does not invalidate its order.

From the foregoing we think it appears that the estimate of yearly earnings derived by considering increased wages, overtime, and by a greater number of hours worked, resulting in a larger yearly income, is not the test to be applied in ascertaining whether the employee is entitled to an allowance for partial incapacity. This becomes the more apparent when we consider if respondent had his old job as a machine operator, with the yearly earnings calculated as they are by plaintiff in error, his earnings would be increased to the extent of approximately thirty per cent, which in itself is sufficient to show that even though the figures relied upon by plaintiff in error are accurate, they still fail to show that the respondent is not entitled to the award of partial disability pay.

The judgment of the circuit court of Williamson County in confirming the award and quashing the writ of *certiorari* was correct, and accordingly is affirmed.

*Judgment affirmed.*