OLD BEN COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Jon M. Porvaznik, Appellee).

Fifth District (Industrial Commission Division)   No. 5—89—0080WC

Opinion filed June 11, 1990.

A. Courtney Cox, of Hart & Hart, of Benton, for appellant.

William D. Hanagan, of Hanagan & Dousman, of Mt. Vernon, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

In proceedings under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*), an arbitrator found that the petitioner, Jon M. Porvaznik, had sustained injuries as a result of two separate incidents arising out of and in the course of his employment with the respondent, Old Ben Coal Company. The arbitrator consolidated the two claims and found that as a result of an incident that occurred on December 30, 1981, the petitioner was temporarily totally disabled for 23³/₇ weeks pursuant to section 8(b) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(b)), and permanently disabled to the extent of 5% pursuant to section 8(d)(2) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(d)(2)). With respect to a second incident that occurred on October 28, 1983, the arbitrator awarded the petitioner wage differential benefits under section 8(d)(1) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(1)), based on a finding that the petitioner was incapacitated from pursuing his usual and customary line of employment. On review, the Industrial Commission affirmed the arbitrator's decision. Judge Terrence J. Hopkins of the circuit court of Franklin County confirmed the Commission's decision. The respondent appeals.

At the arbitration hearing held on April 16, 1986, the petitioner testified that he was working as a roof bolter for the respondent on December 30, 1981. On that day, he was required to set timbers in the respondent's coal mine. As he bent over to pick up a board, a timber fell and struck him on his lower back, knocking him to the ground. The petitioner felt a stabbing pain in his back. No one else was around so he got up, walked to his boss, and told him what had happened. The petitioner continued working that day and for several weeks thereafter, but did not perform any heavy lifting. During the weeks following his injury, the pain in his back worsened and he sought medical treatment. He was off work from February 4, 1982, until July 11, 1982. After returning to work on July 12, the petitioner was assigned to a job as a roof bolter's assistant, which required him to lift no more than 15 pounds.

The petitioner introduced into evidence results of the preemployment medical examination and X rays he had undergone at the request of the respondent in February of 1977. The physical examination revealed that the petitioner's health was normal. The radiologist's report of AP and lateral X rays of the spine showed that the petitioner had no fractures or dislocations. The intervertebral joint spaces and sacroiliac joints were normal.

The petitioner's medical records from the Rea Clinic revealed that he was first seen by Dr. Scott Zimmerman and physical therapist Robert Steffl on January 28, 1982. An X-ray examination of the petitioner revealed "mild spondylolisthesis involving L5, finding anterior superior aspect of the first sacral segment, suggesting an old marginal fracture." Steffl's medical records noted that the petitioner had a history of back pain dating back several years and that the pain had become acute within the past two months. Zimmerman recorded that he saw the petitioner again on July 27, 1982, and referred him to Dr. Thomas W. Davis, who advised the petitioner that he should quit coal mining and find a job involving no physical labor. Zimmerman further noted that the petitioner informed him that he was going to return to work. Zimmerman then advised the petitioner that returning to work could be dangerous.

A letter dated April 1, 1982, from Dr. Davis to Dr. Zimmerman, stated that it was Dr. Davis' impression that the petitioner had an acute lumbar sprain, strain, and contusion superimposed on the spondylolisthesis at L5-S1.

The petitioner was also treated at the Rea Clinic by Dr. Z. Taylor. After seeing the petitioner in November of 1982, Taylor noted that it was his impression that while the petitioner had real medical problems, he was exaggerating their severity to avoid working. On November 12, 1982, Taylor noted that the petitioner was improving due to physical therapy and recommended that he return to work. The Rea Clinic records further revealed that the petitioner was not totally disabled on November 11, 1982, and that he was released to work on November 17, 1982.

Regarding the second incident in which the petitioner allegedly sustained injuries to his back, the petitioner testified that after he was released to work in November of 1982, he worked until he sustained an injury to his arm when top coal fell and struck him on his head and arm. The record is unclear regarding the date of the petitioner's arm injury. The arm injury did not cause any new damage to his back, but did require him to miss several weeks of work. After being released to work in September of 1983, the petitioner was assigned the job of shoveling coal onto a belt. He found that this activity bothered his back. On October 28, 1983, he was shoveling coal when wet coal stuck to his shovel, causing him to jerk forward and twist his back. As the petitioner fell to his knees, he felt a sharp pain in his back. He continued having considerable pain in his back for several weeks thereafter.

Medical records from the Rea Clinic indicated that the petitioner

was treated for his back problems on November 1 and November 16, 1983. A report signed by Dr. Zimmerman, dated November 17, 1983, stated that the petitioner was totally disabled.

Dr. Marshall B. Conrad, an orthopedic surgeon, examined the petitioner on December 20, 1983, at the request of the petitioner's attorney. A letter summarizing his examination was introduced into evidence. Conrad noted that the petitioner complained of lower back pain. The petitioner related his symptoms to the injury he had sustained in December of 1981. According to Conrad's letter, the petitioner had attempted to return to work but found that the symptoms were aggravated by working. Conrad compared the X rays of the petitioner's back taken on December 20, 1983, with X rays taken on January 28, 1982. He indicated that both sets of X rays showed spondylolisthesis and that it had not changed in degree. However, Conrad did note that there had been some change in the appearance of the bony fragment adjacent to the anterior superior margin of the body at S1 and that it might well represent a fracture.

Dr. David Lange examined the petitioner on February 2, 1984, at the request of the petitioner's attorney. In a letter dated February 7, 1984, Lange noted that the petitioner told him that he had suffered a work-related injury on December 30, 1981, and that since that time he had had fairly continuous pain in his lower back. The petitioner also told Lange that he returned to work several times, but currently was not working because of his back pain. Lange's examination revealed that the petitioner had a grade 1 spondylolisthesis at L5-S1. Lange also indicated that the petitioner should not return to work and that surgery could relieve some of his symptoms but that there was no guarantee he would be able to return to work even with surgery.

A letter dated March 16, 1984, from neurologist David M. Reisler, was introduced into evidence by the petitioner. Reisler's letter summarized his examination of the petitioner and the X rays taken of the petitioner's back on March 3, 1984. According to the letter, the petitioner stated that he had injured his back on December 30, 1981. The petitioner told Reisler that after he intermittently missed several months from work due to his 1981 back injury and an unrelated arm injury, he returned to work around September of 1983. According to Reisler's letter, the petitioner stated that his work assignment involved shoveling coal onto a belt all day and that it bothered his back. Reisler recommended that the petitioner not return to work as a coal miner.

At the arbitration hearing, the parties stipulated that the petitioner's accidental injuries of October 28, 1983, arose out of and in the

course of his employment and that there was a causal connection between the petitioner's accident and his condition of ill-being. The parties further stipulated that the petitioner's average earnings during the year preceding his October 28, 1983, injury had been $429.08 per week as calculated pursuant to the provisions of section 10 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.10). The arbitrator noted that the issues to be determined were the nature and extent of the injury and whether a wage differential as provided for in section 8(d)(1) should be awarded.

Regarding his earning capacity, the petitioner testified that he had become a roof bolter in 1980. He stated that a roof bolter was classified as a grade 5 employee and that he was classified as a roof bolter up until his injury on December 30, 1981. The petitioner also stated that when he returned to work in September of 1983, he was assigned to a different shift with a different mine manager, because there had been a general layoff. He noted that following the layoff he was assigned the job of belt shoveling. He stated that belt shoveling was grade 1 work and the lowest paying job in the mine. The petitioner further stated that at the time of his injury he was a member of the United Mine Workers of America, District 12. He introduced into evidence a copy of one of the pages of the union contract under which the respondent was operating at the time of the arbitration hearing. The contract was known as "The National Bituminous Coal Wage Agreement of 1984" and set forth the daily wage rates and the quarterly wage increases for grade 5 employees for the period from October 1, 1984, until January 1, 1988. The petitioner stated that the daily wage of a roof bolter as of January 1, 1986, was $117.72 per day and that a roof bolter was required to work at least five days per week.

The petitioner further testified that sometime following his injury on October 28, 1983, he discussed with his doctors whether he should undergo surgery. He stated that he decided against surgery because of the risk associated with anesthesia and the prognosis that he probably could not return to work even if he had surgery. Thereafter, he requested that the respondent provide him with the rehabilitation necessary to acquire a skill with which he could find employment and earn a living. No evidence was presented that the respondent complied with that request.

The petitioner then attempted to find light work in the southern Illinois area. Because he was unable to find work, he left Illinois and went to Michigan. There he obtained employment at Laco Screw Products, earning $4.25 per hour or $170 per week. The petitioner in-

troduced into evidence several $170 checks made out to him from Laco Screw Products. He testified that he was not required to do any loading or unloading at his new job.

Following the arbitration hearing, the arbitrator awarded the petitioner benefits for permanent partial disability under section 8(d)(2) of the Act, based on the injury he had sustained on December 30, 1981. The arbitrator further awarded the petitioner wage differential benefits pursuant to section 8(d)(1) of the Act, based on his finding that the petitioner on October 28, 1983, had aggravated a preexisting lower back injury. The arbitrator computed the section 8(d)(1) award for the period from October 1, 1984, to the time of the hearing, by taking 66⅔% of the difference between the average amount the petitioner would have earned at the time of the hearing as a grade 5 roof bolter and the average weekly amount he earned in his employment at Laco Screw Products. The Commission approved the arbitrator's award, and the circuit court confirmed the Commission's decision. The respondent appeals.

On appeal, the respondent first argues that the petitioner failed to prove he was unable to return to his regular employment with the respondent. The respondent contends that none of the doctors who examined the petitioner following the October 28, 1983, incident were aware of that incident and therefore the petitioner's injury was not traceable to a definite time, place, and event.

The petitioner initially answers the respondent's argument by noting that the parties stipulated prior to the arbitration hearing that the petitioner's October 28, 1983, injury was causally related to his condition of ill-being. He contends that that stipulation precludes the respondent's argument that the petitioner failed to prove he suffered an injury on October 28, 1983, that aggravated his preexisting condition.

■ Initially, it should be noted that the parties cannot bind a court by stipulating to a question of law or the legal effect of facts. (*Domagalski v. Industrial Comm'n* (1983), 97 Ill. 2d 228, 454 N.E.2d 295.) Moreover, the authority to address an issue depends on whether the issue was raised at arbitration or on review; controverted issues are defined by the parties' conduct rather than their contradictory prior stipulation. *Neal v. Industrial Comm'n* (1986), 141 Ill. App. 3d 289, 490 N.E.2d 124.

■ We note that the petitioner presented evidence at the arbitration hearing regarding how he had injured his back on October 28. The record further reveals that the respondent contested the issue of causal connection both before the Commission and the circuit court, by way of the same arguments it now makes on appeal. Accordingly,

we find that the parties' prior contradictory stipulation does not prevent the respondent from asserting the instant argument.

■■■ Turning to the merits, we note that a claimant's testimony regarding his experiencing back pain while lifting at work may be sufficient to trace an incident to a definite time, place, and cause; moreover, a claimant may recover on his own testimony without corroboration. (*Interlake Steel Co. v. Industrial Comm'n* (1985), 136 Ill. App. 3d 740, 483 N.E.2d 979.) Medical testimony is not necessarily required to establish causation and disability; proof of an employee's state of health prior to the time of injury and the change immediately following the injury is competent as tending to establish that the impaired condition was due to the injury. (*Westinghouse Electric Co. v. Industrial Comm'n* (1976), 64 Ill. 2d 244, 356 N.E.2d 28.) Resolving disputes in the evidence and drawing reasonable inferences and conclusions therefrom is the responsibility of the Industrial Commission, and given its expertise in the area of workers' compensation, its findings on the disability of a claimant should be given substantial deference. *County of Cook v. Industrial Comm'n* (1988), 177 Ill. App. 3d 264, 532 N.E.2d 280.

■■ We find that the instant incident is traceable to a definite time, place, and cause. It is undisputed that the petitioner, while shoveling wet coal for the respondent, jerked his back and fell to his knees in pain on October 28, 1983. The respondent places great emphasis on its argument that there was no medical evidence linking the petitioner's physical condition to the October 28, 1983, incident. However, the medical evidence did reveal that the petitioner was able to work prior to the injury. Yet four days after the October 28 injury, the petitioner was seen by doctors at the Rea Clinic and found to be totally disabled. Moreover, none of the doctors who saw the petitioner following his injury suggested that he return to work as a coal miner. Further, Dr. Conrad noted that his comparison of X rays taken on January 28, 1982, and December 20, 1983, revealed that there had been some change in the X rays, which may have represented a fracture.

The respondent contends that none of the doctors who examined the petitioner after October 28, 1983, were aware that he had injured his back on that date, but rather believed that the only injury had occurred on December 30, 1981. We find, however, that the Commission could have properly concluded otherwise. Dr. Conrad noted that the petitioner's symptoms were aggravated by working. Dr. Reisler noted that the petitioner found that shoveling coal bothered his back. The lack of detail in their reports regarding the second injury may be explained by the fact that the first injury was much more severe than

the second and was the initial cause of the petitioner's unstable back. Accordingly, we conclude that the Commission's finding that the petitioner sustained an injury on October 28, 1983, which rendered him unable to pursue his usual and customary line of employment, was not against the manifest weight of the evidence.

The respondent next argues that if a wage differential award is warranted, the petitioner should only receive an award based on the amount the parties stipulated his earnings were prior to the injury, since the petitioner did not establish that he was capable of earning more than his stipulated earnings. The respondent further contends that the Commission's award was mere speculation, since it did not take into account days off from work due to sickness, injury, absenteeism, layoffs, and strikes.

The respondent relies on *Deichmiller v. Industrial Comm'n* (1986), 147 Ill. App. 3d 66, 497 N.E.2d 452, in support of its position. In *Deichmiller*, the court found that the Commission had properly refused to base its wage differential award on the amount the claimant might have earned as a union journeyman plumber, because doing so would have been mere speculation since the claimant at the time of the accident had not attained that job classification.

We find that *Deichmiller* is inapposite. In the instant case, the record reveals that the petitioner was classified as a roof bolter in 1980, before he sustained either of his back injuries. Conversely, in *Deichmiller*, the petitioner had never attained the status of union journeyman plumber prior to his injury.

■ The language of section 8(d)(1) of the Act indicates that the Commission should calculate wage differential awards based on the amount the claimant would be able to earn at the time of the hearing if the claimant were able to fully perform the duties of the occupation in which he was engaged at the time of the accident. (*General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 495 N.E.2d 68.) We are unaware of any cases directly on point, but agree with the petitioner's assertion that the statute provides that a wage differential should be calculated on the presumption that but for the injury, the employee would be in the full performance of his duties. Accordingly, we hold that the Commission properly elected to compute the wage differential award based in part on the petitioner's classification at the time of the original injury, rather than on the stipulated amount that he had actually earned.

The respondent next argues that at the time of the accident on October 28, 1983, the petitioner was working as a grade 1 miner, the lowest paying job in the mine, and therefore the award was improp-

erly based on a grade 5 job classification.

■ Initially, it should be noted that there is nothing in the record which indicates the respondent raised this issue before the Commission or in the circuit court; consequently, this court need not consider it on review. *General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 495 N.E.2d 68.

On the merits, we note that the petitioner was classified as a grade 5 roof bolter sometime in 1980. He remained at grade 5 until his December 20, 1981, injury. The record is unclear whether the petitioner continued to be classified as a grade 5 employee after he returned to work following his first back injury. At the time of his second injury, the petitioner was performing the work of a belt shoveler, which was a grade 1 job classification. However, it is unclear whether while performing the grade 1 job, the petitioner was nevertheless classified as a grade 5 employee.

In view of the fact that the record does not contain any evidence clearly showing that the petitioner's classification had been reduced, we find that the Commission could have properly inferred that he was classified as a grade 5 employee at the time of the October 28, 1983, injury, since it was within the Commission's province to weigh the conflicting evidence and draw reasonable inferences therefrom. *General Motors Corp., Central Foundry Division v. Industrial Comm'n* (1989), 179 Ill. App. 3d 683, 534 N.E.2d 992.

The respondent next argues that the Commission arrived at the wage difference by comparing the petitioner's net pay at his current job with his gross pay at his former job. It contends that the petitioner's paychecks introduced into evidence were made out in the amount of $170 each and that common practice suggests that that amount must be net pay.

■ Again the record does not indicate that the respondent raised this argument in the circuit court; therefore, this court need not consider it on review. *General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 495 N.E.2d 68.

Nevertheless, upon turning to the merits, we note that the petitioner testified that he earned $4.25 per hour or $170 per week at his job at Laco Screw Products. No evidence was offered as to whether this amount represented his gross or net pay. We find that in the absence of evidence showing that this amount represented the petitioner's net pay, the Commission could reasonably infer that it represented his gross pay, since where the evidence is such that different inferences may be drawn therefrom, a reviewing court will not disregard a reasonable inference drawn by the Industrial Commission

merely because other inferences may be drawn. *Fritz Electric Co. v. Industrial Comm'n* (1988), 165 Ill. App. 3d 550, 518 N.E.2d 1289.

For the foregoing reasons, the judgment of the circuit court of Franklin County is affirmed.

Affirmed.

McNAMARA, WOODWARD, McCULLOUGH and LEWIS, JJ., concur.