TED ALBRECHT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Chicago Bears Football Club, Appellee).

First District (Industrial Commission Division)   No. 1—94—1622WC

Opinion filed March 17, 1995.—Rehearing denied April 28, 1995.

Wiedner & McAuliffe, Ltd., of Chicago, for appellant.

Goggin, Cutler & Hull, of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:
Claimant, Ted Albrecht, appeals the trial court's affirmance of
the Industrial Commission's decision which affirmed the arbitrator's
finding that claimant was not entitled to a wage-loss differential pur-

suant to section 8(d)(1) of the Workers' Compensation Act (Act) (820 ILCS 305/8(d)(1) (West 1992)). Claimant appeals, alleging that the trial court erred in applying section 8(d)(2) of the Act and that the trial court was required to award compensation to claimant under section 8(d)(1) of the Act since the elements of that paragraph were established. The issue of whether a wage-loss differential award under section 8(d)(1) is available to professional athletes is one of first impression in Illinois.

The record indicates that claimant was a first-round draft choice of the Chicago Bears Football Club (Bears) in 1977. Claimant played as an offensive lineman for five seasons from 1977 through 1981. On April 2, 1982, claimant sustained an L5-S1 disc herniation and an L4-L5 bulging disc after performing "leap frog" exercises at the Bears training camp. Dr. Henry Apfelbach, an orthopedic surgeon, treated claimant between April 1982 and May 1983. Although Dr. Apfelbach released claimant to resume his previous job, he gave claimant a 50% chance of achieving further success as a professional football player due to claimant's back surgery and the inactive period following the operation. Claimant was on injured reserve for the 1982 season. He was paid a salary but did not play. Claimant's earnings were $130,000 for 1982, his last year as a professional football player.

Claimant resumed practicing with the Bears at the training camps in 1983 but soon became aware that he was too slow and stiff from his injury to be physically capable of satisfactory performance. Claimant decided to voluntarily resign from professional football. Thereafter, he began a travel service business. Claimant also worked as a sportscaster. He earned approximately $80,000 in 1983, $80,000 in 1984, $87,000 in 1985, and $36,000 in 1986. The evidence indicates that the other Bears offensive linemen who played during this period were paid considerably more than claimant's earnings.

On June 28, 1991, the arbitrator awarded claimant temporary total disability benefits for 67⁴/₇ weeks and found claimant was permanently disabled to the extent of 50% under section 8(d)(2) of the Act. The arbitrator acknowledged that claimant was "forced to change careers" due to his injury but nonetheless determined that claimant was not entitled to a wage-loss differential award under section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 1992)). The arbitrator noted that claimant has "good executive skills, ambition and the willingness to work hard to make his business succeed and his side jobs to prove lucrative. Because his earning [sic], except for a drop in 1986, show a steady rise beginning in 1983, 1984 and 1985 *** and in the Arbitrator's view, will continue to show an increase an award under (d—1) of § 8 makes little sense." The arbitrator determined

that the only way to fairly judge claimant's earnings was to compare claimant's 1982 earnings with those he earned in later years. The arbitrator concluded that "[u]sing other lineman's [*sic*] earnings as comparable is unfair because no player is guaranteed selection to the team even if he is healthy." Claimant appealed the denial of the section 8(d)(1) wage differential award, and the Bears appealed the award of 50% loss of man as a whole under section 8(d)(2) of the Act.

On January 29, 1993, the Commission affirmed that portion of the arbitrator's decision denying an award under section 8(d)(1) of the Act. The Commission reduced the arbitrator's award from 50% man as a whole to 30% man as a whole under section 8(d)(2) of the Act.

Claimant filed a complaint for review in the circuit court regarding the Commission's refusal to provide a section 8(d)(1) wage differential award. The trial court confirmed the Commission's decision. In its memorandum decision, the trial court noted that the usual trade contemplated for an award under section 8(d)(1) is that which can span the lifetime of a claimant. The trial court referred to testimony at the arbitrator's hearing from members of the Bears organization which indicated that the average playing time of an offensive lineman is less than 10 years. The trial court stated that "[f]rom the moment (claimant) started playing football, (claimant) was in a position of temporary employment, not a career where he could anticipate continued employment as long as he desired." The trial court concluded that any presumption that "but for" his injury claimant could have continued playing football is not applicable. The trial court also found that claimant failed to prove an impairment of earning capacity. The court noted that claimant's line of work would have been over before the time of hearing and his earning capacity as a football player would have ended. The court concluded that "[w]here no evidence exists that Petitioner would have continued in his usual and customary line of employment, earning his pre-injury wages, an award of wage differential is not appropriate."

The sole issue on appeal is whether the trial court's refusal to apply section 8(d)(1) to the facts of this case was error as a matter of law. We conclude that a wage-loss differential award should have been entered in favor of claimant as a matter of law.

Section 8(d)(1) provides:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this Section, receive compensation for the dura-

tion of his disability, subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section, equal to $66^2/3\%$ of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." 820 ILCS 305/8(d)(1) (West 1992).

We note that such "wage loss" provisions were the predominant theories of compensation in the original worker's compensation statutes in this country. (1C A. Larson, Workmen's Compensation § 57.14(b), at 10—76 (1993).) Although "schedule principles" later dominated the field, the "wage loss" principle has reemerged in recent years since scheduled awards are not always fair or certain. *General Electric Co. v. Industrial Comm'n* (1982), 89 Ill. 2d 432, 437.

In order to qualify for a wage differential award under section 8(d)(1), claimant must prove (1) partial incapacity which prevents him from pursuing his "usual and customary line of employment," and (2) an impairment of earnings. (820 ILCS 305/8(d)(1) (West 1992).) The purpose of this section is to compensate the injured employee for his reduced earning capacity, and if the injury does not reduce his earning capacity, he is not entitled to such compensation. (*Fritz Electric Co. v. Industrial Comm'n* (1988), 165 Ill. App. 3d 550, 559.) The wage differential is to be calculated on the presumption that, but for the injury, the employee would be in the full performance of his duties. (*Old Ben Coal Co. v. Industrial Comm'n* (1990), 198 Ill. App. 3d 485, 493.) The award is to be based "on the difference between the 'average amount' the employee would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of injury and the 'average amount' he is earning or is able to earn in some suitable employment after his injury." (*General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 1017.) Thus, claimant here must show that, but for his injury, he would have continued his professional football career as an offensive lineman with the Bears after 1983.

Respondent argues that claimant cannot prove how long he could have continued playing professional football or how much he would have earned without engaging in speculation. Respondent contends that the competitive nature and physical demands of the sport dictated that claimant's employment as a Bear was of a temporary nature in that it was dependent on claimant's ability to excel over other players competing for his job. The record indicates that Ted Phillips, contract negotiator for the Bears, testified at the arbitration

hearing that the player salary level depended mainly on performance level and where one ranks in relation to other players on the team. Jim Finks, general manager for the Bears during claimant's career, stated in an affidavit that claimant signed contracts year to year with the Bears and that such contracts were contingent on claimant's success in making the football team. Finks stated that not every player is guaranteed to make the team in any given year. He also averred that the average career length of a National Football League (NFL) offensive lineman is less than 10 years.

It is well settled that liability under the Act cannot be premised on speculation or conjecture but must be based solely on the facts contained in the record. (*Fritz Electric Co.*, 165 Ill. App. 3d at 560.) However, we may not base our decision solely on the evidence submitted by the Bears organization since that would require impermissible speculation that claimant's career would not have extended beyond 1983 due to the nature of the sport when evidence in the record indicates otherwise. Claimant acknowledges that he, like many workers, was an at-will employee and thus was not guaranteed employment from year to year. However, the record shows that claimant, a first-round draft choice, started every game from his first season in 1977 up to the time of his injury. It is further acknowledged that there are offensive linemen in the NFL, and specifically with the Bears, who have been successfully playing professional football for more than the 10-year average averred by Jim Finks.

■ In *Old Ben Coal Co.*, the appellate court held that section 8(d)(1) provides that "a wage differential should be calculated on the presumption that but for the injury, the employee would be in the full performance of his duties." (*Old Ben Coal Co.*, 198 Ill. App. 3d at 493.) We believe that the evidence here created a presumption that, but for claimant's injury, he would have been in the full performance of his duties as a Bears offensive lineman after 1983. Section 8(d)(1) provides that the employee *shall* receive compensation for the duration of his disability equal to 66% of the difference "between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." (820 ILCS 305/8(d)(1) (West 1992).) We conclude that claimant entered suitable employment or business necessary for a wage-loss differential award when he began his travel business in 1983. Accordingly, claimant's benefits should have been calculated on this basis.

■ We reject the trial court's finding that the position of profes-

sional football player is "beyond the realm of the skilled worker contemplated" by those cases that have awarded a wage-loss differential under section 8(d)(1) of the Act. The trial court distinguished claimant's "temporary" career from that of the skilled worker in *Old Ben Coal Co.* (198 Ill. App. 3d at 493) where the wage-loss award was applied to the practice of a trade that spanned the lifetime of the claimant. The trial court in the instant case noted that there was never a possibility here of claimant's employment extending to his retirement from the work force. However, the text of section 8(d)(1) does not speak to situations of shortened work expectancy and there is no indication that this paragraph was intended to exclude employees in these circumstances. Indeed, it is more common in the work force today for an employee to change job positions several times over his career, whereas the practice of a trade spanning the lifetime of an employee is less common. We conclude that professional football players are skilled workers contemplated under the statute and that any shortened work expectancy in claimant's career would not preclude him from a wage-loss differential award under section 8(d)(1) beginning in 1983 when he started his travel business.

Respondent also argues that claimant failed to prove that his injury resulted in impairment of his earning capacity, the second requirement for an award under section 8(d)(1) of the Act. The object is to compensate the injured employee for his reduced earning capacity, but if the injury does not reduce his earning capacity, he is not entitled to such compensation. *(Franklin County Coal Corp. v. Industrial Comm'n* (1947), 398 Ill. 528, 532.) "The test is the capacity to earn, not necessarily the amount earned." *Franklin County Coal Corp.*, 398 Ill. at 532; see also 1C A. Larson, Workmen's Compensation § 57—15, at 10—111 (1993) ("[I]t is earning impairment that should be crucial; actual wage-loss is significant as the best evidence of loss of earning capacity, but obviously some adjustments based on what the worker is 'able to earn' must be made *** to avoid conspicuous injustice").

As stated previously, section 8(d)(1) provides that awards thereunder are to be based on the difference between the "average amount" the employee would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of injury and the "average amount" he is earning or is able to earn in some suitable employment after his injury. (820 ILCS 305/8(d)(1) (West 1992).) In finding that claimant failed to prove an impairment in his earning capacity, the trial court noted that claimant's line of employment would have been over before the time of the arbitrator's hearing and his earning capacity as a football player would have

ended; thus, compensation for loss of earnings would be "fatuous" given that he would have to engage in another occupation regardless of injury. The trial court also noted the arbitrator's finding that claimant's earnings showed a steady rise after 1983 and would in all probability continue to show an increase.

■ The evidence indicates that claimant's earnings were approximately $80,000 in 1983, $80,000 in 1984, $87,000 in 1985, and $36,000 in 1986. These amounts are considerably less than claimant's salary of $130,000 for his final season with the Bears in 1982. The evidence clearly shows an impairment in claimant's earning capacity after his injury in 1982. Claimant's earnings in the years after his injury did not even come close to his final 1982 salary with the Bears. We note that the evidence indicates that the salaries of claimant's fellow linemen increased dramatically after 1983, although we will not speculate as to what amount claimant would have earned in the years after 1983. We conclude that claimant has shown an impairment in his earning capacity and is eligible for wage-loss benefits under section 8(d)(1). The calculation of claimant's wage-loss differential award is to be determined from 1983 when he began his business and not the date of the 1988 hearing. Claimant's award is to be based on the difference between his 1982 salary of $130,000 and the amounts he actually earned in the years after his injury in 1982.

Accordingly, we reverse the Commission and remand this cause in order for the Commission to enter an award pursuant to section 8(d)(1) of the Act consistent with the evidence herein.

Reversed and remanded with directions.

RAKOWSKI, McCUSKEY, and RARICK, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:

An award under section 8(d)(2) is appropriate when a claimant's injury partially incapacitates him from pursuing the duties of his usual and customary line of employment but does not result in an impairment of earning capacity.

The Commission's decision granting the section 8(d)(2) award was appropriate and was not against the manifest weight of the evidence.